## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BFI WASTE SERVICES OF TEXAS, LP, | § | |
| D/B/A ALLIED WASTE SERVICES OF | § | |
| RIO GRANDE VALLEY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:15-cv-059 |
| | § | |
| CITY OF SANTA ROSA, TEXAS, | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The Court is in receipt of the Motion for Summary Judgment filed by Plaintiff, BFI Waste Services of Texas, LP, D/B/A Allied Waste Services of Rio Grande Valley (hereinafter, "Allied"). Dkt. No. 26. For the reasons provided below, Allied's Motion is denied.

## I. Jurisdiction

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

## II. Procedural History

Allied initiated this action by filing its Complaint for Accelerated Declaratory Relief on April 6, 2015. Dkt. No. 1. Allied's Complaint seeks monetary relief, attorneys' fees, and accelerated declaratory judgment relief pursuant to the federal

Declaratory Judgment Act (hereinafter, "DJA"), 28 U.S.C. §§ 2201, 2202, and Federal Rule of Civil Procedure 57. *Id*. at 4. The primary relief sought by Allied, however, is a declaratory judgment which states that it has a valid and enforceable contract with Defendant, City of Santa Rosa (hereinafter, "Santa Rosa"), to be the exclusive provider of solid waste collection and disposal services in Santa Rosa, through June 25, 2020. *Id.* at 9.

On April 22, 2015, Santa Rosa filed a Motion to Dismiss. Dkt. No. 5. In brief, Santa Rosa's Motion to Dismiss argued that the Court should dismiss this action because Santa Rosa is immune from suit in federal court pursuant to § 271.156 of the Texas Local Government Code. *Id*. at 2-3. Allied filed a Response to Santa Rosa's Motion to Dismiss on May 8, 2015. Dkt. No. 6. Allied argued that it may maintain a federal DJA action in this Court despite § 271.156. *Id*. As the parties' briefing left certain questions unanswered, the Court ordered the parties to submit briefing on several issues bearing upon Santa Rosa's alleged immunity from suit under § 271.156, prior to June 5, 2015. Dkt. No. 8.

On May 11, 2015, the parties filed a Joint Motion for Expedited Rule 16 Pretrial Conference and Scheduling of Expedited Final Hearing (hereinafter, "Joint Motion for Conference"). Dkt. No. 7. On May 21, 2015, Allied filed its first opposed Motion for Leave to Amend Complaint. Dkt. No. 9. The Court denied this first Motion for Leave to Amend Complaint without prejudice to refiling, finding that the new claims contained in the proposed amended complaint were too vague, as drafted, to state a federal cause of action. Dkt. No. 10. The Court granted the Joint

Motion for Conference in part, setting a Rule 16 pretrial conference for June 9, 2015.  Dkt. No. 13.  The parties filed their supplemental briefing on the issue of Santa Rosa's alleged immunity on May 28th, May 29th, and June 5th, respectively.  Dkt. Nos. 11, 12, and 14.

The Court held a Rule 16 pretrial conference on June 9, 2015.  At the conference, the parties stated their joint wish for expedited consideration of this action pursuant to the DJA and Federal Rule of Civil Procedure 57.  The parties also indicated that they wished to consent to have a United States Magistrate Judge conduct all further proceedings, through trial and judgment, pursuant to 28 U.S.C. § 636(c).  The parties then submitted a signed Consent to Proceed Before a Magistrate Judge form.  Dkt. No. 16.  United States District Judge Andrew S. Hanen transferred this action to the undersigned for all further proceedings on June 9, 2015.  Dkt. No. 18.  The Court entered a scheduling order that same day, setting expedited deadlines per the parties' request, including a dispositive motion deadline of June 18, 2015, a response date of June 24, 2015, a final pretrial date of July 2, 2015, and a trial date of July 6, 2015.  Dkt. No. 19.

Allied filed an opposed Second Motion for Leave to Amend on June 9, 2015.  Dkt. No. 15.  On June 10, 2015, the Court denied Allied's Second Motion for Leave to Amend without prejudice to refiling, again finding that Allied's proposed amended complaint was too vague, as drafted, to state a federal cause of action.  Dkt. No. 20.  The Court also denied Santa Rosa's Motion to Dismiss, finding that

Santa Rosa had failed to demonstrate that § 271.156 of the Texas Local Government Code provided it with immunity from suit in federal court.  Dkt. No. 21.

On June 18, 2015, both parties filed timely Motions for Summary Judgment. Dkt. Nos. 25 and 26.[1]  The parties also filed timely responses to their opponent's Motion for Summary Judgment on June 24, 2015.  Dkt. Nos. 27 and 28.

### III.  FED. R. CIV. P. 56

The standard applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 56(a).  In pertinent part, Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*, *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986) (same).  Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).

A fact is material if it might affect the outcome of the lawsuit under the governing law.  *Anderson*, 477 U.S. 242, 248.  A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.*  Therefore, summary judgment is proper if, under governing

---

[1]  This Memorandum Opinion and Order addresses Allied's Motion for Summary Judgment alone. The Court will address Santa Rosa's Motion for Summary Judgment in a separate Memorandum Opinion and Order.

laws, there is only one reasonable conclusion as to the verdict. If reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted. *Id*. at 249.

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the resisting party to present affirmative evidence to defeat the motion. *Anderson*, 477 U.S. 242, 257. All facts and inferences drawn from those facts must be viewed in the light favorable to the party resisting the motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774 (2007). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

## IV. Discussion

**A. Allied's Arguments**. Allied argues that it is entitled to summary judgment because the undisputed facts show that it has a valid, enforceable contract with Santa Rosa to be the exclusive provider of solid waste collection and disposal services in Santa Rosa, through June 25, 2020. Dkt. No. 26 at 1. More specifically, Allied argues that it is entitled to summary judgment on "its anticipatory breach claim" because Santa Rosa has attempted to terminate its use of Allied's services, despite the fact that Allied's contract with Santa Rosa does not expire until June 25, 2020. *Id*. Allied asserts that it "is also entitled to obtain a

declaratory judgment that the parties extended the contract through June 25, 2020 because contract interpretation is a matter of law and no genuine issue of material fact exists." *Id*.

Allied supports its Motion for Summary Judgment with certain factual allegations (Dkt. No. 26 at 1-3) and a Separate Statement of Facts (hereinafter, "Separate Statement"). Dkt. No. 26-2. In relevant part, Allied describes these facts as follows.

1. Allied entered into a contract with Santa Rosa on June 15, 2010. The contract became effective on June 26, 2010. Pursuant to the contract, Allied agreed to provide Santa Rosa with solid waste collection and disposal services in exchange for payment at certain specified rates. The contract's initial term was five years, that is, from June 26, 2010 to June 25, 2015. Section 10.00 of the contract provided that the contract term would automatically renew at the end of the initial contract term, for an additional five years, unless Allied or Santa Rosa gave proper, timely notice of its intent to terminate the contract. Dkt. No. 16 at 1-2; Dkt. No. 26-2 at 1-2. Specifically, § 10.00 provided as follows:

> 10:00 Term
>
> The initial term of this Contract shall be for a (5) five-year period beginning upon the execution of Contract. The initial term of this Contract shall automatically be extended for successive additional (5) year terms, unless either party notifies the other party in writing not less than one-hundred eighty (180) days prior to the expiration of the initial term or of any successive term, if its intention is to terminate this contract. Any such written notice shall be served by certified or registered mail, return receipt requested.

Dkt. No. 1-3 at 9.

2.   The contract provided that it could be amended, but only upon written consent of Allied and Santa Rosa.  Dkt. No. 1-3 at 1.  Pursuant to § 13.02 of the contract, Allied's rates would increase, based on the Consumer Price Index ("CPI"), on October 1st of each year.   Before each CPI-based rate increase, Allied was required to send Santa Rosa a statement showing the predicted increase.  Dkt. No. 1-3 at 10-11; Dkt. No. 26-2 at 2.

3.   In September of 2013, Allied began transporting waste to the La Gloria Landfill because the landfill it had been using in Donna, Texas had reached capacity and was no longer available.  Shipping waste to the La Gloria Landfill increased Allied's third-party transportation costs.   In September or October of 2013, Santa Rosa "expressed concerns with the October 1, 2014 rate increase provided to Allied by § 13.02 of the Contract."  Dkt. No. 26 at 2.  On September 23, 2013, Allied's General Manager, Jon M. Deicla, sent a letter "Re: Contract Renewal/Disposal Site" to Santa Rosa's Mayor, Ruben Ochoa, Jr., (hereinafter referred to as "Deicla's letter").  Dkt. No. 26-2 at 2; Dkt. No. 26-3 at 18-19.  Deicla's letter informed Ochoa of Allied's increased costs.  *Id*.  In relevant part, Deicla's letter went on to provide:

> Despite these significant increases [of Allied's costs], Allied Waste does appreciate your business and wishes to ask the City of Santa Rosa to consider the following renewal offer.
>
> **Renewal Offer**
>
> •     **Allied Waste would waive the 2014 increase.**
> •     **The City of Santa Rosa would still receive:**
>
>        ► **5% franchise fee paid on all commercial services;**

> ► **4% CPI cap;**
>
> ► **Free: Three – 3 cubic yard trash dumpsters emptied once per week at various City locations;**
>
> ► **Free: Two – 30 yard roll-off hauls each month at public works;**
>
> ► **Free: Handicapped Service;**
>
> ► **Free: Stolen cart replacement.**
>
> · **Roll-off Rates – Roll-off construction dumpsters are priced based upon haul charge and actual weight of the container. In order to charge customers correctly, they need to be charged for weight actually placed in the container. Effective upon passage, the new roll-off rates would be:**
>
> > ► **Per Haul: currently $221.20 . . . would <u>decrease</u> to $208.60.**
> >
> > ► **Disposal: currently $30.51 per ton . . . would <u>increase</u> to $35.55 per ton[.]**
> >
> > ► **On lighter loads, cost could actually decrease for customers.**

This is a fantastic offer for the City of Santa Rosa that would allow the residents and business's the opportunity to continue to receive the service they have become accustomed to.   Contract would be extended as per Section 10.00 of the current contract.  This offer is valid until October 30, 2013.

Dkt. No. 26-3 at 18-19 (emphasis and errors in original).

4.  On October 14, 2013, Santa Rosa posted its Notice of Regular Meeting, which listed the agenda for the meeting set to take place on October 17, 2013.  Item number seven on the agenda indicated that "[c]onsideration and possible action on approving the contract renewal presented by Allied Waste" would be one of the subjects discussed during the October 17, 2013 meeting.  Dkt. No. 26-3 at 21; *see also* Dkt. No. 26-2 at 3.  The minutes from October 17, 2013 meeting provided, in relevant part, as follows:

> Allied Waste representatives, Damien Saenz, Sales Manager and Rey Allegria, Municipal Representative, spoke on renewal of contract with Allied Waste and the City.   First motion to approve the renewal of contract, subject to Legal council review of the terms, was made by Alderman Rickford.   Second motion was made by Alderman Villanueva.

Dkt. No. 26-3 at 24 (errors in original).

5.   On November 26, 2013, Santa Rosa's attorney, Gilberto Hinojosa, sent a letter to Allied's Division Sales Manager, Damian A. Saenz.  Dkt. No. 26-2 at 4.  The letter provided as follows:

> Dear Mr. Saenz:
>
> I am in receipt of, and thank you for, your letter regarding your proposal for extending the existing Solid Waste Contract with the City of Santa Rosa.  The purpose of this letter is to clarify the terms of that extension.  As I understand the proposal that was approved by a vote of the City of Santa Rosa Board of Alderman (subject to approval of the specific terms by the undersigned city attorney), Allied Waste Services A/K/A Republic Services proposes to extend the existing Solid Waste Contract with the City of Santa Rosa under the existing terms of the contract with the minor modifications contained in the letter proposal presented and approved by the City of Santa Rosa Board of Alderman at their regular Board Meeting on November 17, 2013.  If this is In fact the agreement for the renewal of the Solid Waste Contract, indicate you approval and agreement below.
>
> Please return the executed original of this letter to my office upon its execution by you.

Dkt. No. 26-3 (errors in original).  Jon Deicla authorized Saenz to sign the letter. Dkt. No. 26-1 at 2.  The second page of this letter shows that it was "Approved and Agreed to" on November 26, 2013, by Saenz.  Dkt. No. 26-3 at 2.

6.   On December 12, 2014, Santa Rosa's Acting City Manager, Jared Hockema, sent a letter to Deicla.  Dkt. Dkt. No. 26-2 at 4.  The letter stated that it

would "serve as notice of termination" of its "June 10, 2010" contract with Allied. Dkt. No. 26-3 at 29.  The letter also notified Deicla that the City intended to issue a request for proposals ("RFP") for waste collection services, and invited Allied to submit an RFP.  *Id*.  On March 14, 2015, Santa Rosa issued an RFP for solid waste collection and disposal services.  Dkt. No. 1-8.

7.  Allied then reminded Santa Rosa that it had agreed to renew its contract with Allied through 2020, and asked Santa Rosa to withdraw its RFP.  Dkt. No. 26 at 3; *see also* Dkt. No. 1-9 at 1-2.  Santa Rosa stated that it had not renewed the contract, therefore it could terminate the contract pursuant to its notice.  Dkt. No. 26 at 3.

Allied argues that it is entitled to summary judgment as a matter of law because the above-summarized facts reveal that Santa Rosa agreed to the renewal of the contract through June 25, 2020, and that the contract is valid and enforceable.  Dkt. No. 26 at 4-10.  Allied asserts that Santa Rosa "accepted Allied's offer to extend the Contract through June 25, 2020 when the Board of Alderman approved the renewal offer subject to review by its legal counsel."  Dkt. No. 26 at 6.

> Both the October 17, 2013 meeting minutes and the November 26, 2013 letter from the City's attorney, an agent of the City, evidence the City's consent in writing.  The November 26, 2013 letter specifically refers to the "proposal that was approved by a vote of the City of Santa Rosa Board of Alderman."  This proposal is Allied's renewal offer stating that the "Contract would be extended as per Section 10.00 of the current contract."  Moreover, the letter states that the Contract will be extended "under the existing terms of the contract."  Extending "under the existing terms of the contract" means pursuant to § 10.00 which provides for a renewal through June 25, 2020.  The letter also shows that the City's attorney asked Allied to confirm that its offer

was to extend under the existing terms of the Contract by signing the letter.

*Id.*

Allied states that Hinojosa sent no further correspondence after sending the November 26, 2013 letter.  Dkt. No. 26 at 6.  Allied claims that, pursuant to the terms of its renewal agreement, it did not implement the rate increase due to take effect on October 1, 2014.  Allied states that it would not have agreed to waive its rate increase absent a promise by Santa Rosa to renew the contract.  *Id.*

**B. Santa Rosa's Arguments.**  In its competing Motion for Summary Judgment, which will be addressed in a separate Memorandum Opinion and Order, Santa Rosa argues that it did not agree to renew the contract through June 25, 2020.  Dkt. No. 25 at 8-11.  Santa Rosa contends that when Hinojosa wrote to Saenz to clarify the terms of Allied's proposed extension, he was making certain that the offer was to extend the contract "**under the <u>existing terms</u> of the contract with the <u>minor modifications</u>**" contained in Deicla's letter, dated September 23, 2013.  *Id.* at 10 (emphasis in original).  Santa Rosa asserts that the "minor modifications" contained in Deicla's letter did not include a renewal for an additional five-year term, and that this fact is made clear when one reviews Deicla's letter.  *Id.*

The "Renewal Offer" set out in Deicla's letter is emphasized in bold text.  Dkt. No. 26-3.  The bolded text offers various benefits to Santa Rosa, but it does not state that acceptance of the Renewal Offer is conditioned on an extension of the contract through June 25, 2020.  *Id.*  Santa Rosa argues that the "only mention of an extension is the oblique reference to Section 10.00 of the 'current contract.'"  Dkt.

No. 25 at 9.  This oblique reference is not in bold, and it is not contained in the indented portion of the letter set out under the heading "Renewal Offer."  *Id*. at 9-10.  Instead, the reference is in the final substantive paragraph of Deicla's letter.

> This is a fantastic offer for the City of Santa Rosa that would allow the residents and business's the opportunity to continue to receive the service they have become accustomed to.  Contract would be extended as per Section 10.00 of the current contract.  This offer is valid until October 30, 2013.

Dkt. No. 26-3 at 19.

Santa Rosa contends that if Allied had intended to make a mandatory five-year renewal term part of the agreement, Allied would have included that term under the Renewal Offer heading, and bolded it, along with the rest of the terms. Dkt. No. 25 at 9-10.  Santa Rosa states that a mandatory five-year renewal term would have been a modification of the existing terms of the contract, and a material one at that.  Therefore, Allied had no right to expect that Santa Rosa would view its offer as intending to include a mandatory five-year renewal term, or as being conditioned upon the acceptance of a mandatory five-year renewal term, because Allied failed to make that intent clear.  Santa Rosa argues that there was no meeting of the minds with respect to a mandatory five-year renewal, and "Hinojosa did not consider nor approve a 'renewal' for an additional five-year term." *Id*. at 10. Santa Rosa states that if the parties had believed they were considering such a term, "either Hinojosa or Allied Waste would have specifically set that term out and amend (sic) the contract to reflect such an important term." *Id*.

Santa Rosa points out that the plain meaning of § 10.00 of the contract also supports its argument.  Section 10.00 provides that the initial term of the contract, or any successive term, will be automatically extended for an additional five years, unless Santa Rosa or Allied provide written notice at least 180 days before the expiration of the contract term in effect.  Dkt. No. 1-3 at 9.

> The initial term of this Contract shall be for a (5) five-year period beginning upon the execution of Contract.  The initial term of this Contract shall automatically be extended for successive additional (5) year terms, unless either party notifies the other party in writing not less than one-hundred eighty (180) days prior to the expiration of the initial term or of any successive term, if its intention is to terminate this contract.  Any such written notice shall be served by certified or registered mail, return receipt requested.

*Id*.  Santa Rosa argues that the contract had no other provision for renewal or extension.  Dkt. No. 25 at 9.  Therefore, in agreeing to extend the contract "**under the underlying existing terms of the contract with the minor modifications[,]**" Santa Rosa indicates that it was merely agreeing that § 10.00 should continue to apply, along with the other existing terms of the original June 10, 2010 contract.  *Id*. at 10 (emphasis in original).  Because § 10.00 allows the parties to terminate the contract with proper notice, and because the parties did not amend § 10.00 or any other part of the contract to include a mandatory five-year term provision, Santa Rosa argues that Allied's reference to § 10.00 does not support Allied's Motion for Summary Judgment.  *Id*. at 9-11.

Because Santa Rosa gave Allied written notice of termination on December 12, 2014, that is, more than 180 days prior to the June 25, 2015 expiration of the June 10, 2010 contract, Santa Rosa argues that it is not bound to use Allied's

services through June 25, 2020.  Dkt. No. 25 at 10.  Santa Rosa additionally claims that if Allied had meant to remove Santa Rosa's right to issue a notice of termination pursuant to § 10.00, then Allied had a duty to make that intention clear because Allied drafted the terms of its offer.  *Id.* at 11.  Santa Rosa asserts that Texas law applies here and requires a result in its favor because Allied's terms were ambiguous, at best.  *Id.*

## C. Analysis

Section 18.00 of the parties' June 10, 2010 contract states that Texas law shall apply to any disputes arising under the contract.  Dkt. No. 1-3 at p. 13.  Under Texas law, a contract is valid when there has been (1) an offer, (2) acceptance of the offer, (3) a meeting of the minds, (4) consent to the terms of the contract by all parties, and (5) execution and delivery of the contract with the intent that it be binding and mutual.  *Paragon Indus. Applications, Inc. v. Stan Excavating, LLC*, 432 S.W.3d 542, 547 (Tex.App.–Texarkana 2014, no pet.).  Established principles of contract interpretation provide that "all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another."  *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999).

The question of whether a contract is ambiguous is a question of law.  *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996) (*per curiam*); *National Union Fire Ins. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).  The Court determines whether a contract is ambiguous "by looking at the

contract as a whole in light of the circumstances present when the parties entered the contract." *Friendswood Dev. Co.*, 926 S.W.2d 280, 282 (citing *National Union Fire Ins.*, 907 S.W.2d 517, 520).

> A contract is ambiguous "if its plain language is amenable to more than one reasonable interpretation." *Nautilus Ins. Co. v. Country Oaks Apts. Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009) (applying Texas law). If a contract is unambiguous, we apply its plain meaning and enforce it as written. *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) (applying Texas law). If a contract is ambiguous, then, and only then, do we consider extrinsic evidence for "the purpose of ascertaining the true intentions of the parties expressed in the contract." *Id.* (quoting *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 283 (Tex.1996)).

*Horn v. State Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012) (applying Texas law).

When an instrument is ambiguous then the instrument will be construed against its drafter. *Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 665 (Tex. 1964); *Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 630 (Tex. App.--Texarkana 2008, pet. denied). However, this rule does not apply until after the Court applies the ordinary rules of contract interpretation and determines that the instrument is still ambiguous. *Ramsay*, 254 S.W.3d 620, 630 (citing *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951)). In applying these rules, the Court must endeavor to give effect to the parties' intent as that intent is expressed in the instrument. *Id.* (citing *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983)). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* at 631 (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). "When a contract contains an ambiguity, the granting of a motion

for summary judgment is improper because the interpretation of the instrument becomes a fact issue." *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) (citing *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1980)); *see also Progressive County Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 809 (Tex. 2009) ("After reviewing the face of the documents and extrinsic evidence, we hold that the documents are ambiguous, and therefore, a fact finder should resolve the meaning.") (citations omitted).

Here, determining whether the parties contracted to renew the contract through June 25, 2015, requires the Court to look at more than one document.  The Court must look at (1) Deicla's letter containing the Renewal Offer; (2) the minutes from Santa Rosa's Board of Aldermen meeting; (3) Hinojosa's letter confirming the terms of the Renewal Offer; and (4) § 10.00 of the June 10, 2010 contract. Considered together, these documents suggest that the contract was renewed or extended pursuant to the terms of § 10.00, but the terms of that renewal with respect to duration are not clear.

Deicla's entire letter may concern the Renewal Offer, but the plain language of the letter reveals that the entire letter cannot be construed as the Renewal Offer. *See* Dkt. No. 26-3.  For example, Deicla's description of the closing of the La Gloria Landfill is not an offer, nor is Deicla's description of Allied's increased costs.  The only portion of the letter that can logically be read as Allied's Renewal Offer, is the bolded, italicized, indented portion of the letter laid out below the heading "Renewal Offer."  *Id*.  This portion of the letter says nothing about the length of the proposed extension/renewal of the contract.

The meeting minutes from Santa Rosa's Board of Aldermen and Hinojosa's letter confirming the terms of the Renewal Offer also say nothing about the length of the proposed extension/renewal of the contract.  Dkt. No. 26-3 at 24, 26.  The second to last paragraph of Deicla's letter does state that the contract "would be extended as per Section 10.00 of the current contract."  Dkt. No. 26-3 at 19.  However, § 10.00 of the contract merely provides that the initial term of the contract, or any successive term, will be automatically extended for an additional five years, unless Santa Rosa or Allied provide written notice at least 180 days before the expiration of the contract term in effect.  Dkt. No. 1-3 at 9.  Section 10.00 speaks to the length of an automatic renewal, beginning on June 26, 2015, in the event that Allied or Santa Rosa fail to issue a proper, timely notice of termination. *Id.*  Section 10.00 does not speak to the length of a possible renewal term, or extension, negotiated more than a year prior to June 26, 2015. *Id.*

Viewed separately and together, the aforementioned writings lack clarity and do not reveal the parties' intent with respect to the length of the contested extension/renewal.  Because these writings are ambiguous, then, the Court may look at extrinsic evidence. *Horn v. State Farm Lloyds*, 703 F.3d 735, 738.  The Court has reviewed Allied's Response to Santa Rosa's Motion for Summary Judgment (hereinafter, "Allied's Response").  Dkt. No. 27.  The Court has also reviewed Santa Rosa's Response to Plaintiff's Motion for Summary Judgment (hereinafter, "Santa Rosa's Response"), along with Santa Rosa's supporting submissions.  Dkt. Nos. 28, 28-1, 28-2.  Having previously reviewed all submissions

17/18

prior to the filing of Allied's Response and Santa Rosa's Response, the Court now finds that the record fails to support Allied's argument that the parties agreed to an extension or renewal of their contract through June 25, 2020.

Although Allied may have intended to reach such an agreement, its offer was ambiguous and this ambiguity must be construed against Allied. *Houston Pipe Line Co.*, 374 S.W.2d 662, 665. "When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." *Coker v. Coker*, 650 S.W.2d 391, 394 (citations omitted). Allied has not demonstrated, as matter of law, that it made an offer to renew or extend the June 10, 2010 contract through June 25, 2020, that was accepted by Santa Rosa. It has additionally failed to show: (1) a meeting of the minds over the length of the extension/renewal, (2) consent to the terms of the contract by all parties, and (3) execution and delivery of the contract with the intent that it be binding and mutual. *See Paragon Indus. Applications, Inc.*, 432 S.W.3d 542, 547. Accordingly, Allied's Motion for Summary Judgment (Dkt. No. 26) is denied.

Signed this 26th day of June, 2015.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**